UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GORDON SWOBODA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-2986 |
| | § | |
| OCWEN LOAN SERVICING, LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Foreclosure cases such as this one have become routine in the federal courts in Texas in the years since the onset of the subprime mortgage crisis. This case is typical: Plaintiff Gordon Swoboda and his then-wife took out a home equity loan on their house in 2006. In 2008, Plaintiff — by then divorced — defaulted on the loan. Beginning in 2008, the bank initiated numerous foreclosure processes, but abandoned all but the most recent, which started in 2013. During this five-year period, the parties engaged in at least one attempt to reach an agreement to modify the loan. It is the validity of that agreement — if an agreement was reached — that is now before the Court.

The motion currently pending before the Court is Plaintiff's Motion for Reconsideration of the Court's prior decision to grant summary judgment to Defendants. At a hearing, the Court granted summary judgment to Defendants on the basis of a loan modification initiated by the loan servicer and signed by Plaintiff in February 2009. (Doc. No. 91.) In his Motion for Reconsideration of that ruling, Plaintiff has introduced evidence tending to indicate that Defendants had not themselves abided by the terms of that agreement, calling into question the efficacy of the purported loan modification. (Doc. No. 86-6.) The Court held a hearing on Plaintiff's Motion for Reconsideration in July, and both parties submitted post-hearing briefing

addressing the status of the loan modification and other evidence that Defendants abandoned the prior acceleration. (Doc. Nos. 96, 97, 98, 99.)

Plaintiff's Motion seeks to alter the final judgment pursuant to Rule 59(e). A motion under Rule 59(e) must "clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Motions under Rule 59(e) "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Id.* In considering a motion for reconsideration, a court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

The central issue in this case is whether U.S. Bank's ongoing attempt to foreclose on Plaintiff's home, which began in 2013, is barred by the statute of limitations. Under Texas law, a lienholder must foreclose on a real property lien not later than four years after the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.035(a). If the noteholder has the option to accelerate the lien, as here, then the date of accrual is the date of acceleration. *Khan v. GBAK Properties, Inc.*, 371 S.W.3d 347, 353 (Tex. App.-Houston 2012). If acceleration is abandoned before the limitations period expires, the note's original maturity date is restored and the noteholder is no longer required to foreclose within four years from the date of acceleration. *Id.* Under Fifth Circuit law, a bank can abandon its prior acceleration of a loan either through agreement or joint action with the borrower or through its own "unilateral" action. *Leonard v. Ocwen Loan Servicing, L.L.C.*, No. 14-20611, 2015 WL 3561333, at *3 (5th Cir. June 9, 2015). A bank "unilaterally" abandons a prior acceleration when, for instance, it sends a loan statement requesting payment on less than the full amount of the loan. *Id.*

In this case, there is no evidence of unilateral acceleration by the bank. Defendants argue that merely sending the Loan Modification to Plaintiff constitutes an abandonment of the prior acceleration. But absent more, an offer of a loan modification agreement is at most a *conditional* abandonment: if the borrower does not accept the loan modification, then the status of the loan does not change and the prior acceleration remains intact. Here, there is no evidence in the record that the bank sent Plaintiff any mortgage statements after the loan modification agreement was sent to show that he could become current on the loan by paying less than the full balance of principal and interest. Accordingly, the Court does not find that the offer of a loan modification agreement constituted unilateral abandonment of the prior acceleration. Alternatively, Defendants argue that U.S. Bank (by then the owner of the loan) sent an additional Notice of Acceleration to Plaintiff in 2009, and that the new notice of acceleration proves that the prior acceleration must have been abandoned at some previous time. *See* Defs.' Br. at 16 (Doc. No. 96). Such a rule would make a mockery of the statute of limitations. Even unilateral abandonment must put the borrower on notice that he can avoid foreclosure by making timely payments; a re-acceleration of the loan does no such thing. *See Leonard*, 2015 WL 3561333, at *3.

Accordingly, if Defendants are entitled to foreclose on the loan, it must be because the 2009 Loan Modification Agreement constituted an effective joint action abandoning the loan. The parties disagree as to whether an effective agreement to modify the loan was ever reached. Defendants contend that the agreement became effective as soon as Plaintiff signed it, as he inarguably did on January 31, 2009. *See* Doc. No. 96-3/96-4. Plaintiff disagrees.

Plaintiff's primary contention is that the bank was required, either by the terms of the contract or by the statute of limitations, to sign the loan. For the reasons set forth on the record at

the prior hearing, the contract does not itself require a countersignature. *See* March 19, 2015 Hr'g Tr. (Doc. No. 91). The statute of frauds also offers no relief because Plaintiff, who is the party "to be bound" by the agreement, did actually sign the agreement. *See* Tex. Bus. & Commerce Code § 26.02(b).

Plaintiff's secondary argument is that his signed copy of the Loan Modification Agreement constituted a counteroffer, not an acceptance of the bank's offer, because Plaintiff made some modifications to the Loan Modification Agreement prepared by the bank. Under Texas law, "[a]cceptance must be identical with the offer in order to make a binding contract." *Gilbert v. Pettiete*, 838 S.W.2d 890, 893 (Tex. App.-Houston 1992). "A material change in a proposed contract constitutes a counter-offer, which must be accepted by the other party." *Id.* When negotiations are in writing, the question of whether an offer was unconditionally accepted is primarily a question of law for the court. *Id.* Thus, the issue for the Court to decide is whether Plaintiff's changes to the draft Loan Modification Agreement constituted a "material change" to the proposed contract.

Under Texas law, "[c]ontracts should be examined on a case-by-case basis to determine which terms are material or essential." *G.D. Holdings, Inc. v. H.D.H. Land & Timber, L.P.*, 407 S.W.3d 856, 861 (Tex. App.-Tyler 2013). A term is "material" if it "deal[s] with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done." *Tonkin v. Amador*, No. 01-07-00496-CV, 2009 WL 1424724, at *3 (Tex. App.-Houston 2009) (quoting BLACK'S LAW DICTIONARY (8th ed. 2004)). Plaintiff's changes to the contract involved striking the name of his ex-wife out of the contract in two places.[1] A change to the parties to the

---

[1] Plaintiff also circled the "principal balance" identified in the Loan Modification Agreement. This does not change the meaning of the agreement, so it alone does not convert the acceptance into a counteroffer.

4

contract is a quintessential "material" change. In the context of a home mortgage, the identity of the parties to the contract may have a huge effect on the terms of the loan, as the mortgage rate is typically closely linked to the creditworthiness of the mortgagor, among other factors. The Court concludes that Mr. Swoboda's modified version of the Loan Modification Agreement constituted a counteroffer, not an acceptance of the bank's prior offer. This cannot be the basis for a finding of abandonment.[2]

Both parties have some claim, sounding in estoppel, for why the Loan Modification Agreement should or should not be enforced. Plaintiff argues that the loan servicers' failure to act in compliance with the Loan Modification Agreement should preclude Defendants from enforcing it against Plaintiff now. *See, e.g.*, Doc. No. 86-6 (April 2015 payoff statement showing calculations based on terms of original loan). Defendants, on the other hand, argue that Plaintiff affirmed the existence of the Loan Modification Agreement in a state court proceeding. *See* Doc. No. 96-4 (court filing by Gordon Swoboda stating that "[a] loan agreement was signed in Jan. 2009 between Homecomings Financial the second note holder. This agreement was signed by Gordon Swoboda and notarized by an agent of Homecoming in Jan. 2009"). Because both sides have behaved inconsistently with the positions they now take, the Court will not find that estoppel disturbs the result otherwise dictated by law.

The Court finds that it erred in its prior ruling that the Loan Modification Agreement was effective as a bilateral abandonment of the prior acceleration of Plaintiff's loan. For the foregoing reasons, Plaintiff's Motion for a New Trial or Relief from Judgment (Doc. No. 86) is

---

[2] Defendants suggest in their brief that engaging in the process of negotiating a loan modification agreement may constitute "actions" sufficient to void a prior acceleration. Defs.' Br., Doc. No. 96 at 13-14. This cannot be the case when Plaintiff did not actually consent to the loan terms proposed by Homecomings. In that respect, the present case is unlike the *Rosas* case cited by Defendants, where the borrowers actually consented to the modification terms and made payments under the modified agreement. *In re Rosas*, 520 B.R. 534, 540 (W.D. Tex. 2014).

**GRANTED** and the previous order of final judgment (Doc. No. 85) is **REVOKED**. Within 14 days of the date of this order, the parties shall confer and advise the Court of a plan to bring this case to a close.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 10th of August, 2015.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE